## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE ESTATE OF JOSEPHINE QUIGLEY and
KARIBA HOLDINGS LIMITED,

        Plaintiff,

        v.

EAST BAY MANAGEMENT, INC., TED
KARKUS, EAST BAY MANAGEMENT, LTD
SCOTT STRADY, and JOHN DOE,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Ted Karkus ("Defendant") hereby gives notice of removal of this action, captioned *The Estate of Josephine Quigley and Kariba Holdings Limited v. East Bay Management, Inc., Ted Karkus, East Bay Management Ltd, Scott Strady, and John Doe,* Docket No. 2013-06131 from the Court of Common Pleas of Bucks County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania.

As set forth herein, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as it is a civil action between citizens of different states in which the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. As grounds for removal, Defendant states as follows:

### I.  STATUTORY BASIS FOR JURISDICTION

1.  Removal of this action is proper under 28 U.S.C. § 1441.  The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as it is a civil action between

citizens of different states with foreign citizens as additional parties in which the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

2.      Plaintiff Estate of Josephine Quigley, by the Executor Guy Quigley ("Plaintiff Estate of Josephine Quigley"), and Plaintiff Kariba Holdings Limited ("Plaintiff Kariba") through its "authorized agent," Guy Quigley, commenced this action on August 9, 2013, by filing a Complaint in the Court of Common Pleas of Bucks County, Pennsylvania (the "Bucks County Action"). A true and legible copy of the Complaint (with its Exhibits A and B attached) is attached hereto as **Exhibit 1**.

3.      In the Complaint, Plaintiffs' allegations focus on two different allegedly improper transfers of stock.

4.      First, Plaintiff Kariba contends in August 2002 it possessed 210,000 shares of the Quigley Corporation (now known as ProPhase Labs, Inc.), which were then transferred on or about August 15, 2002 to Joseph Currivan, William J. Reilly, Esq., East Bay Management Inc. ("EBM, Inc."), and Scott Strady. Compl. ¶¶ 12, 14-16. Plaintiff Kariba claims it did not authorize a transfer of shares to Defendants EBM, Inc. or Scott Strady. Compl. ¶ 20. Exhibit A attached to the Complaint purports to show that EBM, Inc. received 50,000 shares and Mr. Strady received 35,000 of these shares in the purportedly unlawful transfer. *See* Compl. Ex. A. Plaintiff Kariba alleges that at the time of the supposed illegal transfer, the shares of stock had a fair market value of $8.03 per share. Compl. ¶ 24. Plaintiff Kariba also claims that Defendant Karkus was the owner/controlling shareholder/director of EBM, Inc. (Compl. ¶ 9), and that the alleged illegal transfer was done at the express direction of Defendant Karkus "through his corporation EBM, Inc." Compl. ¶ 25.

5.      Second, Plaintiff Estate of Josephine Quigley alleges that at the time of Ms. Quigley's passing on October 26, 1996, she was the rightful owner of 96,000 shares of common stock of The Quigley Corporation. Compl. ¶¶ 36-38.  Plaintiff alleges that on or about April 21, 1997, all of these shares were purportedly transferred to Defendant East Bay Management, Ltd. ("EBM Ltd."). Compl. ¶ 37.  At the time of the alleged transfer, Plaintiff claims the fair market value was $17.50 per share. Compl. ¶ 46.  Plaintiff claims that the alleged illegal transfer was done at the express direction of Defendant Karkus "through his corporation EBM, Ltd." Compl. ¶ 47.

**A.  There Is Complete Diversity Between The Parties**

6.      Diversity of the parties is determined at the time that the complaint is filed. *See Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428 (1991).

7.      As alleged in the Complaint, Plaintiff Estate of Josephine Quigley's legal home is the State of Pennsylvania, the domicile of Guy Quigley. Compl. ¶ 1.

8.      As alleged in the Complaint, Plaintiff Kariba is a foreign corporation "organized and existing pursuant to the law of the Bahamas." Compl. ¶ 3.

**(i)  Defendant Karkus Is A Citizen Of New York**

9.      As to Defendant Karkus, Plaintiff alleges that Defendant Karkus is an "individual with a primary business address as listed in the caption above." Compl. ¶ 3. That address is given as "10 South Clinton Street, Doylestown, PA." This allegation is erroneous.

10.     For purposes of diversity jurisdiction, it is well-established that a natural person is deemed to be a citizen of the state where he is *domiciled. See Swiger v. Allegheny Energy, Inc.,* 540 F.3d 179, 182 (3d Cir. 2008) (citing *Gilbert v. David,* 235 U.S. 561(1915)). To be "domiciled" in a state, a person must reside there and intend to remain indefinitely. *Krasnov v. Dinan,* 465 F.2d 1298, 1300-01 (3d Cir. 1972). A person may have only one domicile, and thus

may be a citizen of only one state for diversity jurisdiction purposes. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914). "[T]he domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Baker v. Home Depot # 4101*, No. 09-03731, 2009 U.S. Dist. LEXIS 101356, at *2 n.1 (E.D. Pa. Oct. 29, 2009) (quoting *McCann v. George W. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006)).

11.    Contrary to the allegations in the Complaint, Defendant Karkus is a domiciliary of the State of New York. As set forth in the attached Affidavit of Ted Karkus, dated September 17, 2013 ("Karkus Aff.") (a true and correct copy of which is attached hereto as **Exhibit 2**), the State of New York is Mr. Karkus's true, fixed, permanent home and place of habitation and where he intends to remain indefinitely. Karkus Aff., ¶¶ 2-3. Mr. Karkus has been a domiciliary of New York for over 20 years, and his home is located at 188 Hewlett Neck Road, Woodmere, NY 11598 where he lives with his wife and two children and has lived there since 2001. Karkus Aff. ¶ 3. Mr. Karkus has a New York driver's license, owns a car that is registered in the State of New York, and pays taxes in New York. Karkus Aff. ¶ 3. He does not own property or maintain a residence in the State of Pennsylvania. *Id.* at ¶ 3.

12.    Without question, Mr. Karkus is a domiciliary and citizen of the State of New York for purposes of diversity jurisdiction.

### (ii) **Defendant Strady Is A Citizen Of Florida**

13.    As to Defendant Strady, Plaintiff alleges that Defendant Strady is an "individual with a last known business address as listed in the caption above." Compl. ¶ 8. That address is given as "10 South Clinton Street, Doylestown, PA." This allegation is erroneous.

14.    For purposes of diversity jurisdiction, it is well-established that a natural person is deemed to be a citizen of the state where he is *domiciled*. *See*, *supra*, ¶ 9.

15.    Contrary to the allegations in the Complaint, Defendant Strady is a domiciliary of the State of Florida. As set forth in the attached Affidavit of Scott Strady, dated September 17, 2013 ("Strady Aff.") (a true and correct copy of which is attached hereto as **Exhibit 3**), the State

of Florida is his true, fixed, permanent home and place of habitation and where he intends to remain indefinitely. Strady Aff., ¶ 3. Mr. Strady has a home in Florida, a driver's license, owns a car that is registered in the State of Florida, and pays taxes in Florida. *Id.* He does not own property or maintain a residence in the State of Pennsylvania. *Id.*

16.     Without question, Mr. Strady is a domiciliary and citizen of the State of Florida for purposes of diversity jurisdiction.

### (iii)  Defendant East Bay Management, Inc. Is A Non-Existent Party

17.     As for Defendant East Bay Management, Inc., Plaintiffs allege that EBM, Inc. "is a domestic corporation with a registered address as listed in the caption above, which was authorized to do business in the Commonwealth of Pennsylvania." Compl. ¶ 4. The address, per the caption, is alleged to be 10 South Clinton Street, Doylestown, PA 18901.

18.     However, there is no such entity.  After a review of its records, the Commonwealth of Pennsylvania's Secretary of State's office has certified,

> That from an examination of the indices in the Office of the Secretary of the Commonwealth fails to disclose a presently subsisting corporation either Foreign or Domestic, or a registration under the provisions of the Fictitious Names Act, or a Limited Partnership, bearing the title EAST BAY MANAGEMENT, INC.

A true and correct copy of the Pennsylvania Secretary of State's Certification, dated June 27, 2013, is attached hereto as **Exhibit 4**.

19.     Because the Pennsylvania Secretary of State certification shows that EBM, Inc. is a non-existent, fictitious entity, then this entity is to be disregarded for purposes of determining whether diversity jurisdiction exists. *See, e.g., Kleiss v. Granite Run Mall*, No. 06-374, 2006 WL 562203, at *1 n.1 (E.D. Pa. Mar. 6, 2006) (the citizenship of defendants sued under fictitious names are disregarded under the removal statutes (citing 28 U.S.C. § 1441(a)); *Karibjanian v. Thomas Jefferson*, No. 89-1891, 1989 WL 89078, at *1 (E.D. Pa. Aug. 3, 1989) (a corporation which, at the time suit is commenced, is not existent and unable to be sued under state law, is no longer a citizen of a state and diversity of citizenship is absent); *Nazario v. Deer & Co.*, 295 F. Supp. 2d 360, 362 (S.D. NY 2003) (defendant company that is out of business is deemed

nominal or non-existent as a matter of law for diversity purposes); 28 U.S.C. §1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.")

### (iv)  **Defendant East Bay Management, Ltd. Is A Foreign Corporation**

20.     Plaintiff alleges that EBM, Ltd. "is a corporation organized and existing pursuant to the laws of the Bahamas." Compl. ¶ 7.

21.     For purposes of removal, EBM, Ltd. is considered an alien and does not defeat diversity in this case. *See* 28 U.S.C.S. § 1332(a)(3).  Diversity jurisdiction exists when diverse U.S. citizens are both plaintiffs and defendants even where joined with aliens who appear on both sides of the dispute. *See Dresser Indus. Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 495, 499-500 (3d Cir. 1997) (citing *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 420 n.6 (5th Cir. 1982)); *see also Allendale Mutual Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir. 1993); *Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985); *Sabino v. Hitachi Koki Co., Ltd.*, No. 09-5971, 2010 U.S. Dist. LEXIS 49409, 2010 WL 1980321, at *4-5 (E.D. Pa. May 17, 2010) (finding that Section 1332(a)(3) grants federal jurisdiction in the presence of aliens on one or both sides of the controversy so long as citizens of different states are on both sides of the litigation and are completely diverse); *Timco Eng'g, Inc. v. Rex & Co., Inc.*, 603 F. Supp. 925, 929-30 (E.D. Pa. 1985).

22.     Diversity jurisdiction is thus appropriate here as the Complaint joins diverse United States citizens – a Pennsylvania plaintiff, and a New York and Florida defendant – with a foreign plaintiff and foreign defendant.

### (v)  **A John Doe Defendant Is Not Considered For Removal**

23.     Finally, the reference to a "John Doe" defendant in the Complaint is not to be considered for purposes of determining whether removal is proper.

24.     As referred to above, the diversity statute explicitly states that "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." *Allen v. GlaxoSmithKline PLC*, No. 07-5045, 2008 WL 2247067, *5 n.4 (E.D. Pa.

May 30, 2008) (As to "John Doe Defendants A-Z as possible defendants, such unknown defendants are not taken into account" in determining whether there is diversity of citizenship (citing 28 U.S.C. § 1441(a)).

25.    Because Plaintiffs' and Defendants' United States domiciliaries are completely diverse and foreign corporations are also included as parties on both sides of the action, there is complete diversity between the parties.

**B.    The Amount in Controversy Requirement Is Met**

26.    The amount in controversy requirement also is met here.  Where a complaint does not request a precise monetary amount, the district court must make an independent inquiry into the value of the claims alleged.  *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993).  Further, "the general Federal rule is to decide the amount in controversy from the complaint itself." *Id.* at 145 (citing *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 6 L. Ed. 2d 890, 81 S. Ct. 1570 (1961)); *Carey v. Pennsylvania Enters., Inc.*, 876 F.2d 333, 337 n.12 (3d Cir. 1989) (stating that the amount in controversy should be determined by a reasonable reading of the value of the rights being litigated).

27.    Plaintiffs claim that, in the case of Mrs. Quigley's estate, 96,000 shares of common stock of The Quigley Corporation (now known as ProPhase) were illegally transferred into an account held by EBM, Ltd. in or about April 1997.  Compl. ¶¶ 36-38.  At the time of the alleged transfer, Plaintiffs claim the fair market value was $17.50 per share.  Compl. ¶ 46.  With regard to Defendant Kariba, Plaintiffs claim that, 210,000 shares of common stock of the Quigley Corporation (now known as ProPhase) were purportedly transferred without authorization to EBM, Inc., and Scott Strady in or about August 2002.  Compl. ¶¶ 12, 14-16.  Exhibit A attached to the Complaint purports to show that EBM, Inc. received 50,000 shares and Mr. Strady received 35,000 of these shares in the purportedly unlawful transfer.  *See* Compl. Ex. A.  Plaintiffs claim that at the time of the alleged illegal transfer, the shares of stock had a fair market value of $8.03 per share.  Compl. ¶ 24.  Plaintiffs claim that in the absence of fraud they "would have received fair market value for said shares." Compl. ¶ 57.

28.     Given the nature and extent of Plaintiffs' alleged injury and damages, Plaintiffs' Complaint places at issue more than $75,000, exclusive of interest and costs.  The amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.  *Angus*, 989 F.2d at 146; *Carey*, 876 F.2d at 337 n.12; *Corwin Jeep Sales & Service, Inc. v. American Motors Sales Corp.*, 670 F.Supp. 591, 596 (M.D. Pa. 1986).

29.     Plaintiffs' claim for damages therefore exceeds the requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

## II.     REMOVAL TO THIS JUDICIAL DISTRICT IS PROPER AND TIMELY

30.     The Complaint was filed in Bucks County, Pennsylvania, on August 8, 2013, and, upon information and belief, the Complaint was then served on Defendant Karkus on September 4, 2013, less than 30 days prior to the date of this Notice of Removal.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

31.     No further pleadings have been filed, and no proceedings have yet occurred in the Bucks County Action.

32.     Defendant bases removal on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## III.    NOTICE IS BEING SENT TO PLAINTIFFS AND FILED IN STATE COURT

33.     Pursuant to 28 U.S.C. § 1446(d), Defendant shall give Plaintiffs written notice of the filing of this Notice of Removal.

34.     Pursuant to 28 U.S.C. § 1446(d), Defendant shall file the written notice of the filing of this Notice of Removal with the Prothonotary of the Court of Common Pleas of Bucks County, Pennsylvania, attaching as **Exhibit A** thereto a copy of this Notice of Removal and the documents attached to this Notice of Removal.

WHEREFORE, Defendant hereby gives notice that the above-entitled state court action, formerly pending in the Court of Common Pleas of Bucks County, has been removed to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

*Brooke Wallace*

Brooke N. Wallace (PA Id. No. 206804)
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania  19103
(215) 851-8100
bwallace@reedsmith.com
***Attorneys for the Defendant Ted Karkus***

Of Counsel:

Lawrence J. Reina (*pro hac vice* forthcoming)
REED SMITH LLP
599 Lexington Avenue
New York, New York  10022
(212) 521-5400
lreina@reedsmith.com
***Attorneys for the Defendant Ted Karkus***

Dated:  September 23, 2013

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Defendant Ted Karkus' Notice of Removal has been forwarded to the Clerk's Office this 23rd day of September, 2013.   A copy of the foregoing has also been sent via electronic mail and U.S. Mail to the following:

>Ronald C. Isgate, Esq.
>ISGATE & CHICCARINE, P.C.
>18 West State Street
>Doylestown, PA 18901
>
>*Attorney for Plaintiffs*

Brooke N. Wallace, Esq.

Exhibit 1

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

BUCKS _____ County

| For Prothonotary Use Only | Case Number: 2013-06131         0 |
|---|---|
| Docket No: | Receipt   2013-32-03098    Judge:32 |
| | Code: 49              Filing: 10306803 |
| | Patricia Bachtle - Bucks Co Prothonotary |
| | B09          8/9/2013 12:59:41 PM |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N   A**

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

Lead Plaintiff's Name:
Estate of Josephine Quigley

Lead Defendant's Name:
East Bay Management, Inc.

Are money damages requested? [x] Yes  [ ] No

Dollar Amount Requested:
(check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

Is this a *Class Action Suit?* [ ] Yes  [x] No

Is this an *MDJ Appeal?* [ ] Yes  [x] No

Name of Plaintiff/Appellant's Attorney: Ronald C. Iscate, Esquire

[ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the ONE case category that most accurately describes your *PRIMARY CASE.* If you are making more than one type of claim, check the one that you consider most important.

**S E C T I O N   B**

**TORT** *(do not include Mass Tort)*
- [x] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability *(does not include mass tort)*
- [ ] Slander/Libel/ Defamation
- [ ] Other:

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

**CONTRACT** *(do not include Judgments)*
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other

- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other

- [ ] Other:

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other

- [ ] Zoning Board
- [ ] Other:

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other:

*Updated 1/1/2011*

ISGATE & CHICCARINE, P.C.
Ronald C. Isgate, Esquire
Identification #91148                    Attorney for Plaintiffs
18 West State Street
Doylestown, PA  18901
(215) 396-1020

| | |
|---|---|
| THE ESTATE OF JOSEPHINE QUIGLEY : | COURT OF COMMON PLEAS |
| 3720 Fountain Circle : | |
| Fountainville, PA  18923 : | |
| and : | |
| KARIBA HOLDINGS LIMITED : | |
| c/o Callanders & Co. : | |
| One Millers Court : | |
| P.O. Box N-7117 : | |
| Nassau, Bahamas : | |
| : | BUCKS COUNTY |
| Plaintiffs : | |
| : | |
| v. : | DOCKET NO.: |
| : | |
| EAST BAY MANAGEMENT, INC. : | |
| 10 South Clinton Street : | |
| Doylestown, PA  18901 : | |
| AND : | |
| TED KARKUS, Individually and as : | |
| Director of East Bay Management, Inc. : | |
| c/o The Quigley Corporation : | |
| 10 South Clinton Street : | |
| Doylestown, PA  18901 : | |
| AND : | |
| EAST BAY MANAGEMENT, LTD : | |
| c/o Spear, Leeds & Kellog : | |
| 120 Broadway, 6th Floor : | |
| New York, NY 10005 : | |
| AND : | |
| SCOTT STRADY : | |
| c/o The Quigley Corporation : | |
| 10 South Clinton Street : | |
| Doylestown, PA  18901 : | |
| AND : | |
| JOHN DOE : | |
| : | |
| Defendants. : | |

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Bucks County Bar Association
135 East State Street
Doylestown, PA 18901
Phone (215) 348-9413, 536-8435,
752-2666

ISGATE & CHICCARINE, P.C.
Ronald C. Isgate, Esquire
Identification #91148                    Attorney for Plaintiffs
18 West State Street
Doylestown, PA 18901
(215) 396-1020

| | |
|---|---|
| THE ESTATE OF JOSEPHINE QUIGLEY : | COURT OF COMMON PLEAS |
| 3720 Fountain Circle : | |
| Fountainville, PA 18923 : | |
| and : | |
| KARIBA HOLDINGS LIMITED : | |
| c/o Callanders & Co. : | |
| One Millers Court : | |
| P.O. Box N-7117 : | |
| Nassau, Bahamas : | |
| : | |
| Plaintiffs : | BUCKS COUNTY |
| : | |
| v. : | |
| : | DOCKET NO.: |
| EAST BAY MANAGEMENT, INC. : | |
| 10 South Clinton Street : | |
| Doylestown, PA 18901 : | |
| AND : | |
| TED KARKUS, Individually and as : | |
| Director of East Bay Management, Inc. : | |
| c/o The Quigley Corporation : | |
| 10 South Clinton Street : | |
| Doylestown, PA 18901 : | |
| AND : | |
| EAST BAY MANAGEMENT, LTD : | |
| c/o Spear, Leeds & Kellog : | |
| 120 Broadway, 6th Floor : | |
| New York, NY 10005 : | |
| AND : | |
| SCOTT STRADY : | |
| c/o The Quigley Corporation : | |
| 10 South Clinton Street : | |
| Doylestown, PA 18901 : | |
| AND : | |
| JOHN DOE : | |
| : | |
| Defendants. : | |

Case Number: 2013-06131
Receipt:   2013-32-03098   Judge:32
Code: 49                Filing: 10306803
Patricia Bachtle - Bucks Co Prothonotary
B09          8/9/2013 12:59:41 PM

<u>CIVIL ACTION COMPLAINT</u>

Plaintiffs, The Estate of Josephine Quigley and Kariba, by and through their attorney, Ronald C. Isgate, Esquire, hereby files this Civil Action Complaint, and in support thereof avers as follows:

1.     Plaintiff, The Estate of Josephine Quigley (referred to herein as "Quigley"), is a validly raised Estate in the County of Bucks for the deceased Josephine Quigley.

2.     Guy Quigley has been duly appointed and named as Executor of the Estate of Josephine Quigley.

3.     Kariba Holdings Limited (referred to herein as "Kariba") is a corporation organized and existing pursuant to the law of the Bahamas with a registered address as listed in the caption above.

4.     Defendant, East Bay Management, Inc. (referred to herein as "EBM, Inc.") is a domestic corporation with a registered address as listed in the caption above, which was authorized to do business in the Commonwealth of Pennsylvania.

5.     Defendant, Ted Karkus (referred to herein as "Karkus") is an adult individual with a primary business address as listed in the caption above.

6.     Defendant, John Doe, is the second required Director for EBM, Ltd. pursuant to the laws of the Bahamas.

7.     Defendant, East Bay Management Ltd. (referred to herein as "EBM, Ltd.) is a corporation organized and existing pursuant to the laws of the Bahamas.

8.     Defendant Strady (referred to herein as "Strady") is an adult individual with a last known business address as stated in the caption above.

9.     At all times relevant hereto, it is believed and therefore averred that Karkus was the owner/controlling shareholder/director of EBM, Inc and EBM, Ltd.

10.     At all times relevant hereto, it is believed and therefore averred that Karkus was the owner/controlling shareholder/and one of the registered directors of EBM, Ltd.

11.     At all times relevant hereto, it is believed and therefore averred that Karkus exercised unilateral control over EBM, Inc.

12.     At all times relevant hereto, Karkus was a substantial shareholder in the company then known as The Quigley Corporation, now known as Prophase Labs, Inc.

13.     Karkus is the CEO of Prophase Labs, Inc.

14.     In August of 2002, Kariba Holdings Limited possessed 210,000 shares of The Quigley Corporation.

15.     Said shares were evidenced by Stock Certificate TQC2695.  A true and correct copy of said certificate number as identified in American Stock Transfer and Trust Company ledger file 1839, dated August 15, 202 is attached hereto as Exhibit "A".

16.     On or about August 15, 2002 all of the shares then owned by Kariba were transferred to Joseph Currivan, William J. Reilly, Esq., East Bay Management, Inc. and Scott Strady.  *See* Exhibit "A".

17.     Prior to the transfer, William Reilly, Esquire was exercising control over Kariba on behalf of Josephine Quigley.

18.     At the time just prior to the transfer, William Reilly, Esquire was removed from controlling Kariba and new officers and owners took control of the company.

19.     The new officers of Kariba were unaware of the ownership of these shares of stock in The Quigley Corporation.

20.     At no time did Kariba or anyone acting legally upon its behalf authorize any transfer of any shares to EBM, Inc or Scott Strady.

21.    At no time was Kariba ever an owner, officer, director, agent or affiliated in any manner with EBM, Inc.

22.    At no time did Kariba have any debts payable to EBM, Inc. or Scott Strady.

23.    At no time was Kariba ever paid any consideration for the shares illegally transferred from their account to EBM, Inc. and Scott Strady.

24.    At the time of this illegal transfer on August 15, 2002, the shares of stock had a fair market value of $8.03 per share.

25.    This transfer was done at the expressed direction of Karkus through his corporation EBM, Inc.

26.    Karkus was a seasoned investor and had knowledge that not only would Kariba have to approve a sale, but would also need to be compensated at an agreed to amount.

27.    Under normal transactions, as admitted by Karkus in a deposition under oath, when purchasing stock of the Quigley Corporation, there was a standard procedure in place where Karkus would purchase the shares via corporate SEC Counsel, William Reilly, Esquire.

28.    Per Karkus, he would receive notice of the available shares from Reilly, who would inform Karkus of the share amount, share price and to whom to make payment.

29.    Thereafter Karkus would receive a legal opinion letter from Reilly informing Karkus of the transaction and the amount required to purchase the shares.

30.    Upon notification, Karkus would transfer funds to Reilly's account for distribution to the Seller, or Karkus would make direct payment to said individual as he had done in previous transactions.

31.     This procedure of oversight of said transactions by SEC Counsel was the standard policy of how Karkus would purchase shares of the Quigley Corporation.  A true and correct copy of the excerpts of Karkus' deposition under oath is attached hereto as Exhibit "B".

32.     Karkus purposefully conducted this transaction with the expressed purpose of defrauding the Kariba.

33.     Karkus and Strady received all of the eventual benefit of the shares by making several transfers through several companies prior to receiving the benefit of the shares.

34.     Karkus did not follow his established protocol of obtaining shares of the Quigley Corporation for the expressed purpose of secretly defrauding the Plaintiff.

35.     Had Karkus abided by his own established protocol under the direction of legal counsel, Kariba would not have been defrauded and would have received fair market value for said shares.

36.     At the time of her passing, Josephine Quigley possessed 96,000 shares of The Quigley Corporation.

37.     On or about April 21, 1997, all of the shares then owned by the late Josephine Quigley were transferred to East Bay Management, Ltd.

38.     Josephine Quigley passed away on October 26, 1996.

39.     At the time of the transfer, not only was Josephine Quigley deceased, but no estate had been raised on her behalf to address any of her affairs or assets.

40.     At no time did Josephine Quigley authorize any transfer of any shares into EBM, Ltd.

41.     At no time did Josephine Quigley specifically authorize anyone to act on her behalf to transfer any shares into EBM, Ltd.

42.    At no time did anyone possess legal authority to exercise control over any of the assets of the late Josephine Quigley.

43.    At no time was Josephine Quigley ever an owner, officer, director, agent or affiliated in any manner with EBM, Ltd or EBM, Inc.

44.    At no time did Josephine Quigley have any debts payable to EBM, Ltd or EBM, Inc.

45.    At no time was Josephine Quigley ever paid any consideration for the shares illegally transferred from her account.

46.    At the time of this illegal transfer, the shares of stock had a fair market value of $17.50 per share.

47.    This transfer was done at the expressed direction of Karkus through his corporation EBM, Ltd.

48.    Karkus was a seasoned investor and had knowledge that not only would the Estate of Josephine Quigley have to approve a sale, but would also need to be compensated at an agreed to amount.

49.    Under normal transactions, as admitted by Karkus in a deposition under oath, when purchasing stock of the Quigley Corporation, there was a standard procedure in place where Karkus would purchase the shares via corporate SEC Counsel, William Reilly, Esquire.

50.    Per Karkus, he would receive notice of the available shares from Reilly, who would inform Karkus of the share amount, share price and to whom to make payment.

51.    Thereafter Karkus would receive a legal opinion letter from Reilly informing Karkus of the transaction and the amount required to purchase the shares.

52.     Upon notification, Karkus would transfer funds to Reilly's account for distribution to the Seller, or Karkus would make direct payment to said individual as he had done in previous transactions.

53.     This procedure of oversight of said transactions by SEC Counsel was the standard policy of how Karkus would purchase shares of the Quigley Corporation.  A true and correct copy of the excerpts of Karkus' deposition under oath is attached hereto as Exhibit "B".

54.     Karkus purposefully conducted this transaction with the expressed purpose of defrauding the Estate of Josephine Quigley.

55.     Karkus received all of the eventual benefit of the shares by making several transfers through several companies prior to receiving the benefit of the shares.

56.     Karkus did not follow his established protocol of obtaining shares of the Quigley Corporation for the expressed purpose of secretly defrauding the Plaintiff.

57.     Had Karkus abided by his own established protocol under the direction of legal counsel, The Estate of Josephine Quigley would not have been defrauded and would have received fair market value for said shares.


## COUNT I - FRAUD

## Kariba v. East Bay Management Inc, Ted Karkus and Scott Strady

58.     Plaintiff incorporates the above referenced paragraphs as though fully set forth herein at length.

59.     As stated more fully herein, EBM, Inc.,  Karkus and Strady unilaterally, collectively and without permission from Kariba, improperly transferred the aforementioned

shares from the above referenced accounts into accounts controlled by him and/or his company EBM. Inc. and Scott Strady.

60.     Karkus, EBM. Inc.'s and Strady's actions were purposeful in nature and done with the expressed purpose of defrauding Kariba.

61.     Karkus, EBM, Inc. and Strady had no authority, expressed or implied, to transfer any shares from Kariba's account.

62.     As a direct result of the Defendants' actions, Kariba has been severely damaged.

WHEREFORE, Kariba Holdings Limited respectfully requests this Honorable Court enter a Judgment in his favor and against the Defendants, both jointly and severally, in an amount in excess of $50,000.00.

## COUNT II - FRAUD

### The Estate of Josephine Quigley v. East Bay Management Ltd, Ted Karkus and John Doe

63.     Plaintiff incorporates the above referenced paragraphs as though fully set forth herein at length.

64.     As stated more fully herein, EBM, Ltd., Karkus and Doe unilaterally, collectively and without permission from The Estate of Josephine Quigley, improperly transferred the aforementioned shares from the above referenced accounts into accounts controlled by him and/or his company EBM. Ltd.

65.     Karkus', Doe's and EBM, Ltd.'s s actions were purposeful in nature and done with the expressed purpose of defrauding The Estate of Josephine Quigley.

66.     Neither Karkus, Doe or EBM, Ltd. had no authority, expressed or implied, to transfer any shares from The Estate of Josephine Quigley's account.

67. As a direct result of the Defendants' actions, The Estate of Josephine Quigley has been severely damaged.

WHEREFORE, The Estate of Josephine Quigley respectfully requests this Honorable Court enter a Judgment in his favor and against the Defendants, both jointly and severally, in an amount in excess of $50,000.00.

## COUNT III - CONVERSION

### Kariba v. East Bay Management, Inc., Ted Karkus and Scott Strady

68. Plaintiffs incorporate the above referenced paragraphs as though fully set forth herein at length.

69. As stated more fully herein, both Kariba was the lawful owner of the above referenced stock.

70. The Defendants unilaterally and without any consent of Kariba, expressed or otherwise, transferred 85,000 shares from Kariba's account to accounts controlled by the Defendants EBM, Inc. and Strady, under the direction of Karkus and Strady.

71. As a result, both Kariba has been improperly deprived of its shares in The Quigley Corporation when the Defendants effectuated the transfer.

72. As stated more fully herein, Kariba was never paid any consideration whatsoever for its shares which were transferred illegally.

73. As a result of the collective actions of the Defendants, Kariba has been severely damaged.

WHEREFORE, Kariba Holdings Limited respectfully requests this Honorable Court enter a Judgment in his favor and against the Defendants, both jointly and severally, in an amount in excess of $50,000.00.

## COUNT IV - CONVERSION

### The Estate of Josephine Quigley v. East Bay Management, Ltd., Ted Karkus and John Doe

74.    Plaintiff incorporates the above referenced paragraphs as though fully set forth herein at length.

75.    As stated more fully herein, The Estate of Josephine Quigley was the lawful owner of the above referenced stock.

76.    The Defendants unilaterally and without any consent of The Estate of Josephine Quigley, expressed or otherwise, transferred 96,000 shares from Josephine Quigley's account to accounts controlled by the Defendants EBM, Ltd., under the direction of Karkus and or Doe.

77.    As a result, The Estate of Josephine Quigley has been improperly deprived of its shares in The Quigley Corporation when the Defendants effectuated the transfer.

78.    As stated more fully herein, The Estate of Josephine Quigley was never paid any consideration whatsoever for its shares which were transferred illegally.

79.    As a result of the collective actions of the Defendants, The Estate of Josephine Quigley has been severely damaged.

WHEREFORE, The Estate of Josephine Quigley respectfully requests this Honorable Court enter a Judgment in his favor and against the Defendants, both jointly and severally, in an amount in excess of $50,000.00.

## COUNT V - UNJUST ENRICHMENT

### Kariba v. East Bay Managment Inc., Ted Karkus and Scott Strady

80.    Plaintiff incorporates the above referenced paragraphs as though fully set forth herein at length.

81.    As stated more fully herein, the Defendants improperly and illegally transferred the enumerated shares from Kariba's account into accounts controlled by the Defendants.

82.    It is believed and therefore averred that Karkus and Strady were the end recipient of the benefit of these shares via several transfers through companies controlled solely by him or deposited directly to them as the case may be.

83.    Due to the actions of the Defendants, the Defendants and specifically Karkus and EBM, Inc., have been unjustly enriched by their improper taking of the above referenced shares.

84.    To allow the Defendants to retain the shares and the benefits derived there from is patently unjust and unduly prejudicial to the Plaintiff.

85.    As a result of the actions of the Defendants, the Plaintiff has been severely damaged.

WHEREFORE, Kariba Holdings Limited respectfully requests this Honorable Court enter a Judgment in his favor and against the Defendants, both jointly and severally, in an amount in excess of $50,000.00.

## COUNT VI - UNJUST ENRICHMENT

### The Estate of Josephine Quigley v. East Bay Managment Ltd., Ted Karkus and John Doe

86.    Plaintiff incorporates the above referenced paragraphs as though fully set forth herein at length.

87.    As stated more fully herein, the Defendants improperly and illegally transferred the enumerated shares from The Estate of Josephine Quigley's account into accounts controlled by the Defendants.

88.    It is believed and therefore averred that Karkus was the end recipient of the benefit of these shares via several transfers through companies controlled solely by him or deposited directly to him as the case may be.

89.    Due to the actions of the Defendants, the Defendants and specifically Karkus, have been unjustly enriched by their improper taking of the above referenced shares.

90.    To allow the Defendants to retain the shares and the benefits derived there from is patently unjust and unduly prejudicial to the Plaintiff.

91.    As a result of the actions of the Defendants, the Plaintiff has been severely damaged.

WHEREFORE, The Estate of Josephine Quigley respectfully requests this Honorable Court enter a Judgment in his favor and against the Defendants, both jointly and severally, in an amount in excess of $50,000.00.

## COUNT VII - CONSPIRACY

### Kariba v. East Bay Management Inc., Ted Karkus and Scott Strady

92.    Plaintiff incorporates the above referenced paragraphs as though fully set forth herein at length.

93.    As stated more fully herein, the Defendants improperly and illegally transferred the referenced shares from Kariba's account into accounts controlled by the Defendants.

94.    The Defendants mutually agreed to take overt actions to defraud Kariba by the covert transfer of their shares.

95.    At no time whatsoever did any of the Defendants possess any permission from Kariba to transfer its shares to their account.

96.    As a result of the Defendant's covert and agreed upon actions, Kariba has been severely damaged.

WHEREFORE, Kariba Holdings Limited respectfully requests this Honorable Court enter a Judgment in his favor and against the Defendants, both jointly and severally, in an amount in excess of $50,000.00.

## COUNT VIII - CONSPIRACY

### The Estate of Josephine Quigley v. East Bay Management Ltd., Ted Karkus and John Doe

97.    Plaintiff incorporates the above referenced paragraphs as though fully set forth herein at length.

98.    As stated more fully herein, the Defendants improperly and illegally transferred the referenced shares from The Estate of Josephine Quigley's account into accounts controlled by the Defendants.

99.    The Defendants mutually agreed to take overt actions to defraud The Estate of Josephine Quigley by the covert transfer of their shares.

100.    At no time whatsoever did any of the Defendants possess any permission from The Estate of Josephine Quigley to transfer its shares to their account.

101.    As a result of the Defendants' covert and agreed upon actions, The Estate of Josephine Quigley has been severely damaged.

WHEREFORE. The Estate of Josephine Quigley respectfully requests this Honorable Court enter a Judgment in his favor and against the Defendants, both jointly and severally, in an amount in excess of $50,000.00.

## COUNT IX - PIERCING THE CORPORATE VEIL

### Plaintiffs v. Karkus

102.   Plaintiffs incorporate the above referenced paragraphs as though fully set forth herein at length.

103.   As stated more fully herein, Karkus utilized EBM, Inc. and EBM, Ltd. under his sole discretion and control, with all actions taken by EBM, Inc. and EBM, Ltd. at the express direction of Karkus.

104.   Essentially, Karkus was utilizing EBM, Inc. and EBM, Ltd. as an alter egos for his actions as Karkus was the ultimate beneficiary of the improper and fraudulent taking of Plaintiffs' shares through EBM, Inc. and EBM, Ltd.

105.   As a result, these actions constitute substantial intermingling of corporate and personal affairs of Karkus.

106.   As stated more fully herein, Karkus' actions through EBM, Inc. and EBM, Ltd. caused the Plaintiffs severe damages as a result of the improper taking of their shares.

107.   Karkus created EBM, Inc. and EBM, Ltd. for the specific purpose of this share taking and did not have any employees.

108.   As a result of the actions taken by Karkus through EBM, Inc. and EBM, Ltd., the corporate forms of EBM, Inc. and EBM, Ltd. should be disregarded.

109.    As a result of the actions taken by Karkus through EBM, Inc. and EBM, Ltd, the corporate veil of EBM, Inc. and EBM, Ltd. should be pierced thereby attaching liability to Karkus.

WHEREFORE, Kariba Holdings Limited and The Estate of Josephine Quigley respectfully requests this Honorable Court enter a Judgment in his favor and against the Defendants, both jointly and severally, in an amount in excess of $50,000.00.

Respectfully submitted,

ISGATE & CHICCARINE, P.C.

BY: _____

Ronald C. Isgate, Esquire

## VERIFICATION

I, Guy Quigley, hereby state that I am the duly appointed Executor of The Estate of Josephine Quigley, Plaintiff in this matter and hereby verify that the statements made in the foregoing Pleading are true and correct to the best of my knowledge, information and belief.

I understand that any false statements herein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

The Estate of Josephine Quigley

DATED: _August 8th 2013_

BY: _____
Guy Quigley, Executor

## VERIFICATION

I, Guy Quigley, hereby state that I am the duly authorized agent of Kariba Holdings Limited, Plaintiff in this matter and hereby verify that the statements made in the foregoing Pleading are true and correct to the best of my knowledge, information and belief.

I understand that any false statements herein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

Kariba Holdings Limited

DATED: _August 8th 2013_

BY: _____
Guy Quigley, authorized agent

EXHIBIT "A"

( 8 5 )

AMERICAN STOCK TRANSFER & TRUST COMPANY

07814

DATE 08/15/2002    PAGE 1039

SEE 1840

| CERTIFICATES SURRENDERED | DENOMINATION BREAKDOWN | PREF. CERT. NUMBER | NO. OF SHARES | CERTIFICATES ISSUED | DESIGNATION BREAKDOWN | PREF. CERT. NUMBER | NO. OF SHARES |
|---|---|---|---|---|---|---|---|
| 000010159<br>KARIBA HOLDINGS LIMITED<br>THE QUIGLEY CORPORATION<br>PO BOX 1349<br>DOYLESTOWN PA 18901 ** RESTRICTED ** | | TQC25425 | 210000 | | | | |
| ***** ACCOUNT BALANCE--------- | ------> | .000 | | | | | |
| | | | | 000001224<br>JOSEPH CORRIVAU<br>396 BROADWAY STE 1001<br>NEW YORK, NY 10013 | | | |
| | | | | ***** ACCOUNT BALANCE------- | -----> | QC2730 | 100000 |
| | | | | | | 100000.000 | |
| | | | | 000001011<br>WILLIAM J REILLY, ESQ.<br>55 MEMORIAL DRIVE<br>NEWPORT RI 02840 | | | |
| | | | | ***** ACCOUNT BALANCE------- | -----> | QC2731 | 25000 |
| | | | | | | 25000.000 | |
| | | | | 000010649<br>EAST BAY MANAGEMENT INC<br>C/O QUIGLEY CORPORATION<br>19 SOUTH CLINTON ST<br>PO BOX 1349<br>DOYLESTOWN   PA 18901 | | | |
| | | | | ***** ACCOUNT BALANCE------- | -----> | QC2732 | 50000 |
| | | | | | | 50000.000 | |
| | | | | 000001376<br>SCOTT STRADY<br>C/O THE QUIGLEY CORPORATION<br>KELLS BUILDING<br>PO BOX 1349 | | | |

THE QUIGLEY CORPORATION (NEW)
KELLS BUILDING
P.O. BOX 1349
621 SHADY RE TREAT ROAD
DOYLESTOWN,PA 18901

13410

TRANSFERRED BY

AMERICAN STOCK TRANSFER & TRUST COMPANY

DATE 09/15/2002    PAGE 1840

A
S    078414
T
C

| CERTIFICATES SURRENDERED | DENOMINATION BREAKDOWN | PREF.& CERT. NUMBER | NO. OF SHARES | CERTIFICATES ISSUED | DESIGNATION BREAKDOWN | PREF.& CERT. NUMBER | NO. OF SHARES |
|---|---|---|---|---|---|---|---|
| | | | | 621 SHADY RE TREAT ROAD BOYERSTOWN PA 18901 | | TQC2733 | 35000 |
| | | | | * * * * * ACCOUNT BALANCE ---------> | | 35000.000 | |
| TRANSACTION # 07B14002129 SHARES SURRENDER[KD=======> | | | 210000.000 | TRANSACTION # 07B14002129 SHARES ISSUED==========> | | 210000.000 | 210000.000 |
| | GRAND TOTAL | | 210000.000 | | GRAND TOTAL | | 210000.000 |

THE QUIGLEY CORPORATION (NEW)
KELLS BUILDING
P.O. BOX 1349
621 SHADY RE TREAT ROAD
BOYERSTOWN, PA 18901

EXHIBIT "B"

12    stock is going to be issued to ProPhase care

13    of William Reilly?

14          MR. WEAVER:  I'm not reading it

15    any way.  I'm looking for the witness to

16    enlighten us all.

17          MR. McGARRIGLE:  Well, I would

18    then ask that you ask him that question

19    rather than putting the rabbit in the hat.

20          MR. WEAVER:  I will,

21    Mr. McGarrigle.

22    BY MR. WEAVER:

23    Q.    Why, if you know, was the stock issued

24    to ProPhase Management on ProPhase 140 issued care

25    of William Reilly, 396 Broadway, New York,

Bucks County Court Reporters - 215.348.1173

118

1          TED KARKUS

2    New York?

3    A.    I don't know why it would be.

4    Q.    Did you and Mr. Reilly have any

5    arrangement by which shares of stock that you

6    purchased would be sent to Mr. Reilly?

7    A.    There were situations where I would

8    purchase stock and Mr. Reilly would arrange for

9    the certificates to be issued in my company name

10    for which I was purchasing.  The source of where

11  those shares came from I often did not know.

12      Q.   So would it be fair to say that in

13  connection with certain purchases of Quigley stock

14  that Mr. Reilly acted as your intermediary in

15  acquiring the stock shares on your behalf?

16              MR. McGARRIGLE:  Objection to

17      the form of the question.

18              Arguing facts not in evidence.

19              It's been gone over ad nauseum

20      by your own witnesses that --

21              MR. WEAVER:  Please.

22              MR. McGARRIGLE:  --

23  Mr. Reilly --

24              MR. WEAVER:  Please.

25              MR. McGARRIGLE:  No.  There's a

119

1              TED KARKUS

2  fact in evidence, Steve.

3              MR. WEAVER:  No.  There's not.

4              MR. McGARRIGLE:  And you're

5  consistently asking questions that have no

6  factual basis in the case.

7              Your own witnesses, your own

8  clients have testified that during this

9  period of time William Reilly was SEC counsel

8    Q.    And in those situations what would

9    Mr. Reilly -- what function would he perform in

10   facilitating the transaction?

11       A.    He would deliver the shares to me and

12   instruct me -- instruct to me where to pay the

13   funds for the shares that I purchased.

14       Q.    And where would you pay the funds for

15   the purchase?

16       A.    It would depend on the transaction.

17   Either Mr. Reilly's escrow accounts or directly to

18   the company.  I don't recall whether there were

19   any situations in which I would pay the seller

20   directly if it was a transaction with the seller.

21       Q.    Okay.  Now, the transaction that we're

22   focusing on in Karkus-4 bears a designation

23   original issue.

24              What, if you know, does that

25   term mean?

Bucks County Court Reporters - 215.348.1173

122

1        TED KARKUS

2    A.    It means that -- what it should mean

3    is that this was not a private transaction in

4    which the shares were already issued to another

5    person or entity where the other person or entity

6    was selling the shares to ProPhase.  It means the

22    A.   No.

23    Q.   You were the sole principal in the

24  East Bay Management, Limited?

25    A.   Yes.

135

1        TED KARKUS

2    Q.   What was the nature of the company?

3         Strike that.

4         What was the corporate purpose

5  of East Bay Management, Limited?

6    A.   Asset protection.

7    Q.   Okay.  What does that mean?

8    A.   Similar to ProPhase Management and

9  Forest Financial.

10   Q.   I'm sorry.  Be more specific.

11   A.   I would form a company for which I

12  would do transactions and the corporation would

13  provide me with some legal protection.

14   Q.   Okay.  How about East Bay Management,

15  Inc. as opposed to East Bay Management, Limited?

16        Have you ever been a director

17  or officer of East Bay Management, Inc.?

18   A.   I don't believe so.

19   Q.   A shareholder in East Bay Management,

20  Inc.?

21    A.    I don't believe so.

22    Q.    Have you ever heard of the company

23  East Bay Management, Inc.?

24    A.    I really -- well, obviously I knew

25  East Bay Management.  So I really don't recall

Bucks County Court Reporters · 215.348.1173

136

1                TED KARKUS

2  forming or being a part of an Inc. separate from

3  the Limited.  It's possible, but I don't think so.

4    Q.    Under the laws of what state were East

5  Bay Management, Limited formed?

6    A.    That was a Bahamian corporation.

7    Q.    Did Mr. Reilly have any involvement of

8  any nature in East Bay Management, Limited; to

9  your knowledge?

10    A.    No.

11    Q.    Waterford Holdings, Limited.

12          Have you ever been a director

13  or officer of that company?

14    A.    No.

15    Q.    Do you know anything about the

16  company?

17    A.    I recall that it was also an offshore

18  corporation.  I believe it was a Bahamian

19  corporation, as well.  I seem to recall Mr. Reilly

13    A.   Correct.

14    Q.   Do you remember testimony from

15  Mr. Quigley concerning an entity that was formed,

16  generally speaking, for his family called Kariba?

17    A.   Yes.

18    Q.   And do you remember him testifying

19  that he believed that you had purchased certain

20  shares that had surreptitiously been taken from

21  Mr. Reilly by Kariba?

22    A.   I recall that you objected to a lot of

23  Kariba questions and it's not clear exactly what

24  Mr. Quigley said or didn't say in that regard.

25    Q.   Okay.  Well, the first question is --

Bucks County Court Reporters - 215.348.1173

191

1        TED KARKUS

2  I'm directing your attention now to the first page

3  of this exhibit, which shows in the upper

4  left-hand corner indicates that Kariba Holdings --

5  strike that.

6            Would you agree with me that

7  the first page of this exhibit shows a transfer of

8  210,000 shares of Kariba Holdings, Limited to four

9  persons and entities?

10    A.   Yes.

11    Q.   Okay.  And would you agree with me

12   that 50,000 shares on the front page also with

13   East Bay Management, Inc.?

14        A.   Yes.

15        Q.   Okay.  And that entity you're

16   affiliated with, East Bay Management, Inc.?

17        A.   I would have to say I really don't

18   remember.  I don't think so.

19             Is it possible I created East

20   Bay Management, Inc?

21             It's possible.  I don't think I

22   did.

23        Q.   Okay.  Then do you have any knowledge

24   who East Bay Management, Inc. is?

25        A.   If I didn't form it I would have no

Bucks County Court Reporters - 215.348.1173

192

TED KARKUS

2   knowledge of who or what that is.

3        Q.   Okay.  And so it was a different East

4   Bay that you created?

5        A.   I created East Bay -- I didn't create.

6   I took control of East Bay Management, Limited, a

7   Bahamian corporation.

8        Q.   Okay.

9        A.   I created a bunch of corporations that

10   I did not use on and off over the years.  I can't

11  remember if I created a domestic corporation

12  called East Bay Management, Inc.

13      Q.    Okay.  Now, setting aside this

14  document, do you have any independent recollection

15  of purchasing Quigley stock in or around -- the

16  date of this document is August 15, 2002?

17      A.    No.

18            The vast majority of

19  transactions that I did in purchasing stock and

20  private transactions happened significantly before

21  this time period.

22      Q.    Okay.

23      A.    It's possible, but I certainly don't

24  recollect it.

25      Q.    Okay.  Now, there's a name at the

Bucks County Court Reporters · 215.348.1173

193

1       TED KARKUS

2   bottom of the page here, another person that

3   received shares from Kariba was Scott Strady, care

4   of the Quigley Corporation, Kells Building in

5   Doylestown.

6            Have you ever heard of Scott

7   Strady?

8       A.    Yes.

9       Q.    Who is Scott Strady?

10      A.   He's an acquaintance of mine that

11   lives in Florida.

12      Q.   How do you know him?

13      A.   I don't know.  I've known him a long

14   time.

15      Q.   Is he a personal friend?

16      A.   Yes.  He developed into a friendship.

17      Q.   Do you have a business relationship

18   with him?

19      A.   Only a business relationship from the

20   point of view that I talked to investors about

21   securities from time to time and I talked to him

22   about securities investments from time to time.

23      Q.   Is he an investor?

24      A.   An investor in what?

25      Q.   In anything.

Bucks County Court Reporters - 215.348.1173

194

1            TED KARKUS

2      A.   Does he invest?

3      Q.   Strike that.

4      A.   Yeah.

5      Q.   Is he an investment professional?

6      A.   No.

7      Q.   Okay.  What's his occupation?

8      A.   He runs a company in the -- I believe

9   in the mortgage business.

10      A.    Okay.

11      Q.    Okay. If you could go five pages in.

12            Now, I just wanted to note --

13   before you move in there that the share that was

14   issued to East Bay Management on page one is

15   TQC2732.

16            Now, if we go in five pages to

17   the Bates numbered page ProPhase 400 are you

18   there?

19      A.    I'm sorry?

20      Q.    These pages are not in Bates number

21   order.

22      A.    Okay.

23      Q.    So you can't go -- you just have to go

24   five pages back.

25      A.    One, two, three, four, okay. I see

Bucks County Court Reporters - 215.348.1173

195

1            TED KARKUS

2   401.

3      Q.    It's 400.

4      A.    Okay. That's the sixth page.

5            MR. McGARRIGLE: No. I'm not

6      with you yet.

7            MR. WEAVER: Okay.

8          MR. McGARRIGLE:  I think

9    whoever put this one together put doubles.

10          So what's the Bates stamp

11   number?

12          MR. WEAVER:  It's ProPhase 400.

13   It's ledger sheet 1861.

14          MR. McGARRIGLE:  I don't seem

15   to have that.  I don't have that.

16   BY MR. WEAVER:

17   Q.    All right.  So we're on page 400.

18   A.    Uh-huh.

19   Q.    And you see 2732.

20   A.    Uh-huh.

21   Q.    Remember those were the shares

22   transferred to East Bay Management?

23   A.    Right.

24   Q.    Fifty thousand shares.

25   A.    Right.

1          TED KARKUS

2    Q.    And they are now being transferred to

3    Gold Fund.

4          Right?

5    A.    Right.

6    Q.    Now, that is your entity?

7    A.   Yes.

8    Q.   Okay.

9    A.   Uh-huh.

10   Q.   Now, do you remember -- do you have

11   any recollection as we sit here today of a

12   transaction in early 2003 in which you purchased

13   50,000 -- well, actually, it would have been --

14   there would have been a transfer of 147,000 --

15   143,000 --

16   A.   Right.

17   Q.   -- 790 shares.

18        Do you remember this

19   transaction?

20   A.   I vaguely remember the 9370 because

21   that actually came from cede.  That wasn't a

22   purchase.  That actually came out of -- I believe

23   that came out of my account.

24   Q.   Okay.

25   A.   Those weren't purchased shares.  The

Bucks County Court Reporters - 215.348.1173

197

TED KARKUS

2   other 50 I don't remember, but I guess it's

3   possible that the 50,000 shares -- it's possible

4   East Bay Management, Inc. was my company and that

5  I purchased shares -- I purchased those 50,000 and

6  combined them and put them in Gold Fund.

7      Q.   Okay.  Do you recall doing that?

8      A.   No.

9      Q.   Okay.  In general, why would you

10  have -- why would it have been your practice to

11  transfer shares to Gold Fund?

12     A.   When was this?

13     Q.   February 7, 2003.

14     A.   Probably because -- I believe I was

15  closing out or I closed all of these companies.  I

16  hasn't closed this one yet.

17         MR. McGARRIGLE:  By "these

18     companies" you're referring to?

19         THE WITNESS:  East Bay

20     Management, Limited.

21         MR. McGARRIGLE:  And this

22     one --

23         THE WITNESS:  Gold Fund hadn't

24     been closed yet.  So I was closing out all

25     the other accounts and shutting them out.  I

Bucks County Court Reporters - 215.348.1173

198

1          TED KARKUS

2      guess Gold Fund I hadn't shut down yet.

3  BY MR. WEAVER:

2          MR. WEAVER: Fair enough. Fair

3     enough.

4          MR. McGARRIGLE: Yeah.

5     BY MR. WEAVER:

6     Q.    But there's no -- it's very plain that

7     however the transaction commenced that the

8     provenance of these 50,000 shares that we have

9     discussed was the Kariba Quigley family account.

10         Correct?

11    A.    I'm sorry.

12         What was the question?

13         It's very clear the 93,000

14    shares didn't come from Kariba.

15    Q.    I'm sorry. The 50,000.

16    A.    The 50,000 -- looks like 50,000 shares

17    was sold from Kariba to East Bay Management, Inc.

18    which were later sold or transferred to me.

19    Q.    Right.

20    A.    So I don't specifically remember East

21    Bay Management, Inc. It's a possibility. As I

22    said before, I created a lot of companies. It's

23    possible I created East Bay Management, Inc. What

24    this would say is that 50,000 shares were sold or

25    transferred to East Bay Management, Inc.

Bucks County Court Reporters - 215.348.1173

201

1

2    Q.    Okay. Now, when you're making a

3    purchase like that would you have -- let's assume

4    that you're a buyer, not -- any buyer, would you

5    have known that Kariba was the entity that was

6    selling the shares?

7    A.    No. Unless I specifically entered

8    into a stock purchase agreement in which the

9    seller and the buyer are both listed on the stock

10   purchase agreement and that was rarely, if ever,

11   the case in these transactions.

12   Q.    What was typically the case?

13   A.    I'm sorry?

14   Q.    How, in your experience, were

15   transactions of this nature handled?

16   A.    As I described earlier, I presented

17   myself to both Mr. Quigley and to Mr. Reilly as

18   someone who had the wherewithal to purchase shares

19   and from time to time I purchased shares. So it's

20   very possible if -- and I'm not saying it is -- if

21   East Bay Management, Inc. was, in fact, my company

22   this would indicate that my company purchased

23   50,000 shares of stock. I would have no way of

24   knowing it came from Kariba. In fact, I'm pretty

25   sure I wouldn't have known it came from Kariba

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| THE ESTATE OF JOSEPHINE QUIGLEY and KARIBA HOLDINGS LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. _____ |
| EAST BAY MANAGEMENT, INC., TED KARKUS, EAST BAY MANAGEMENT, LTD., SCOTT STRADY, and JOHN DOE 1, | ) ) ) ) | |
| Defendants. | ) | |

## <u>AFFIDAVIT OF TED KARKUS</u>

I, TED KARKUS, being duly sworn, state that the following facts are true and correct to the best of my personal knowledge, information and belief:

1.      I am the Chairman and Chief Executive Officer of ProPhase Labs, Inc., a Nevada corporation, which has its principal place of business in Doylestown, PA. ("ProPhase"). I submit this affidavit in support of the Notice of Removal filed on my behalf to remove the action entitled *"The Estate of Josephine Quigley and Kariba Holdings Limited v. East Bay Management, Inc., Ted Karkus, East Bay Management, Ltd., Scott Strady, and John Doe 1,* Docket No. 2013-06131 (Court of Common Pleas, Bucks County, PA) to the United States District Court for the Eastern District of Pennsylvania.

2.      I am not a resident, domiciliary or citizen of the State of Pennsylvania. As President and Chief Executive Officer of ProPhase, I maintain an office at ProPhase's corporate headquarters, at 621 N. Shady Retreat Road, in Doylestown, PA and am present in that office several times each week. However, I am, and intend to remain, a domiciliary, citizen and resident of the State of New York.

3.      The State of New York is my true, fixed, permanent home and place of habitation. I have been a resident of the State of New York for more than 20 years and I intend to remain in

New York indefinitely.  I also have a New York drivers license, I own a car that is registered in the State of New York, and I pay taxes in New York.    I do not own property or maintain a residence in the State of Pennsylvania.

_____

TED KARKUS


SWORN TO AND SUBSCRIBED before me this _17th_ day of _September_ , 2013, by _Ted Karkus_ who is personally known to me or who has produced _NY Drivers License_ as identification and who did take an oath.  If no type of identification is indicated, the above-named person is personally known to me.

_____
Signature of Notary Public

_____
Print Name of Notary Public

Commonwealth of Pennsylvania
NOTARIAL SEAL
Emma Oliver, Notary Public
Doylestown Borough, Bucks County
My Commission Expires April 18, 2017

I am a Notary Public of the State of _Pennsylvania_ , and my commission expires on _April 18, 2017_

Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ESTATE OF JOSEPHINE QUIGLEY and KARIBA HOLDINGS LIMITED, )<br><br>Plaintiffs, )<br><br>v. )<br><br>EAST BAY MANAGEMENT, INC., TED KARKUS, EAST BAY MANAGEMENT, LTD., SCOTT STRADY, and JOHN DOE 1, )<br><br>Defendants. ) | Case No. _____ |

## AFFIDAVIT OF SCOTT STRADY

I, SCOTT STRADY, being duly sworn, state that the following facts are true and correct to the best of my personal knowledge, information and belief:

1.      I understand that I have been named as a defendant in an action filed in the Court of Common Pleas for Bucks County, Pennsylvania, entitled *The Estate of Josephine Quigley and Kariba Holdings Limited v. East Bay Management, Inc., Ted Karkus, East Bay Management, Ltd., Scott Strady, and John Doe 1,*" Docket No. 2013-06131 (Court of Common Pleas, Bucks County, PA). I further understand that the plaintiffs in that case assert that I have "a last known business address" in Doylestown, Pennsylvania.

2.      This is completely false. Contrary to that assertion, I am not, and never have been, a resident, domiciliary or citizen of the State of Pennsylvania. Nor have I ever worked or maintained an office in Doylestown or anywhere else in the State of Pennsylvania.

3.      I am, instead, a domiciliary, citizen and resident of the State of Florida and have been so since July 1986. The State of Florida is my true, fixed, permanent home and place of habitation, and I intend to remain in Florida indefinitely. I own my home in the State of Florida, I have a State of Florida drivers license, I own a car that is registered in the State of Florida, and I

pay taxes in the State of Florida.   I do not own property or maintain a residence in the State of Pennsylvania.

4.      I also consent to the removal of the action, entitled "*The Estate of Josephine Quigley and Kariba Holdings Limited v.  East Bay Management, Inc.,  Ted Karkus, East Bay Management Ltd, Scott Strady, and John Doe*," Docket No. 2013-06131 (Court of Common Pleas, Bucks County, PA) to the United States District Court for the Eastern District of Pennsylvania.

SCOTT STRADY

SWORN TO AND SUBSCRIBED before me this \_\_\_ day of _____, 2013, by _____ who is personally known to me or who has produced_____ as identification and who did take an oath.  If no type of identification is indicated, the above-named person is personally known to me.

_____
Signature of Notary Public

_____
Print Name of Notary Public

I am a Notary Public of the State of _____, and my commission expires on_____.



COLLEEN LAWHORNE
MY COMMISSION # FF 002470
EXPIRES: March 27, 2017
Bonded Thru Notary Public Underwriters

Exhibit 4

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF STATE

June 27, 2013

TO ALL WHOM THESE PRESENTS SHALL COME, GREETING:

I DO HEREBY CERTIFY, That from an examination of the indices in the Office of the Secretary of the Commonwealth fails to disclose a presently subsisting corporation either Foreign or Domestic, or a registration under the provisions of the Fictitious Names Act, or a Limited Partnership, bearing the title,

EAST BAY MANAGEMENT, INC.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of the Secretary's Office to be affixed, the day and year above written.

_____
Secretary of the Commonwealth